UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

Omar Osman Mohamed,

                    Petitioner,

        - v. —

United States of America,

                    Respondent.

18 cv 11193 (DLC)

S8 06 cr 0600-44 (DLC)

--------------------------------------------------------

### PETITION FOR A WRIT OF ERROR CORAM NOBIS VACATING CONVICTION AND INCORPORATED MEMORANDUM OF FACTS AND LAW IN SUPPORT

Duane Morris LLP, Thomas R. Newman (trnewman@duanemorris.com), Kimball Ann Lane (kalane@duanemorris,com) , 1540 Broadway, New York, New York 10036, Telephone: (212) 692-1028/1023, Attorneys for Petitioner Omar Osman Mohamed.

Petitioner Omar Osman Mohamed, through his undersigned pro bono counsel Duane Morris LLP, submits this petition for a writ of error coram nobis to vacate his conviction entered February 8, 2008 in the Southern District of New York by the Hon. Denise L. Cote, USDJ, in the matter captioned *United States v. Mohamed,* No. S8 06 cr. 600 (DLC). For the reasons set forth in this incorporated memorandum of law and facts, the petition should be granted.

### TABLE OF CONTENTS

| | Page |
|---|---|
| RELEVANT FACTS | 2 |
| JURISDICTION, TIMELINESS AND THE STANDARD FOR RELIEF | 5 |
| INEFFECTIVE ASSISTANCE OF COUNSEL IS ONE GROUND FOR RELIEF | 5 |

MR. MOHAMED PLED GUILTY TO A MINOR MISDEMEANOR AFTER
COUNSEL AFFIRMATIVELY MISLED HIM AS TO THE SERIOUS LEGAL
EFFECT OF HIS PLEA. IT WOULD BE A GRAVE INJUSTICE TO
DEPORT HIM TO SOMALIA WHEN HE HAS BEEN IN THE U.S. FOR 23 YEARS
AND ALL HIS IMMEDIATE FAMILY MEMBERS, U.S. CITIZENS, ARE HERE.    8

MR. MOHAMED WAS CONCERNED ABOUT STAYING IN THIS COUNTRY
AND WOULD HAVE (1) PREFERRED TO NEGOTIATE A PLEA TO A
NON-DEPORTABLE OFFENSE OR (2) OBTAIN THE GOVERNMENT'S
CONSENT TO PROBATION UNDER 18 USC § 3607, OR (3) INSISTED ON
LITIGATING HIS AVAILABLE AND VIABLE DEFENSES.    12

VIABLE DEFENSES THAT WERE AVAILABLE TO MR. MOHAMED.    14

THE PETITION IS TIMELY.    17

WHEN THE COURT DENIED THE REQUESTED RELIEF, UNDER
18 U.S.C. § 3607, DEFENSE COUNSEL FAILED TO WITHDRAW
THE GUILTY PLEA.    18

DEFENSE COUNSEL HAS NOT RESPONDED TO REQUESTS FROM
MR. AND MRS. MOHAMED AND THE UNDERSIGNED TO DISCUSS
THE PLEA AND CONVICTION.    20

PRAYER FOR RELIEF    21

## RELEVANT FACTS

1.    Mr. Mohamed was born in Somalia in 1980 and remains a citizen of that country. In 1995, at age 15, he, along with his family, emigrated to the United States as political refugees from Somalia. He obtained his green card in 1996 and, ever since, has been legally residing in the United States as a lawful resident with an Alien Registration Number. (Mohamed Affidavit, **Exhibit 1, ¶** 1)

2.    Since June 2017, Mr. Mohamed has been detained by ICE at various locations in Minnesota pending removal proceedings. (**Exhibit 1,** ¶ 2) He is presently at Carver County Jail, 606 E 4th Street, Chaska MN 55318, under an order of removal dated October 15, 2019 (**Exhibit**

**2)**. On November 14, 2019, he filed a notice of appeal to the BIA from the order of removal. (**Exhibit 3**).

3.      Prior to his detention, Mr. Mohamed lived in Minneapolis, MN, as do his parents, Mr. Osman Abdirhiman, age 67, and Ms. Abay Ayt, age 71, naturalized American citizens, and his five siblings, ranging in age from 28 to 36, and his 13-year old daughter from a prior marriage, all of whom are American citizens. (**Exhibit 1,** ¶ 3 **)**.  His wife, Khadija Adani Mohamed, and two year old son, Sabir, both American citizens, live in Seattle WA.   Mr. Mohamed's father, who had to travel from the Midwest to New York City, attended his son's pre-sentencing interview (**Exhibit 11**, p. 5)**.** In addition to the support of his father, Mr. Mohamed is close to his large extended family.  (**Exhibit 1,** ¶ 3). His file contains a number of his requests to this Court, that were granted, for permission to travel outside the confines set by his bail conditions, *i.e.* Minnesota, to visit his cousins, attend their weddings and participate in family reunions. (**Exhibit 4**).

4.      In April 2006, Mr. Mohamed, who is a musician and singer, was performing at a wedding in Chicago when he was asked by the groom's sister whether he would drive a wedding guest, Abdiazis Salah Mohamed ("Abdiazis"), back to Minneapolis as a favor; he was not paid for that and did not know Abdiazis before then. (**Exhibit 1,** ¶ 4). On April 10, 2006, while driving back to Minneapolis with Abdiazis, Mr. Mohamed was stopped in Saint Croix County, Wisconsin, by State Police for a traffic infraction. (**Exhibit 1,** ¶ 5). A search of the vehicle disclosed 2.7 kg of khat plants behind the passenger seat that belonged to Abdiazis that allegedly contained a controlled substance, cathinone. Government Sentencing Memo ("GSM")(**Exhibit 5** at p. 2)**.** Mr. Mohamed and Abdiazis were then arrested in St. Croix and charged under Wisconsin state law with possession of non-narcotics with intent to deliver and possession of an untaxed controlled

substance and released on $500 cash bond; all state charges against Mr. Mohamed were subsequently dismissed "on prosecutor's motion" (**Exhibit 6**).

5.      On July 26, 2006, Mr. Mohamed was arrested in Minneapolis for the same factual predicate but based on federal charges in Indictment S1 Cr. 600 (DLC), filed in the Southern District of New York and charged with conspiring to distribute khat containing cathinone. (**Exhibit 5** at pp. 2-3**).**

6.      In November 2007, pursuant to a plea agreement, Mr. Mohamed pled guilty before Magistrate Judge James C. Francis IV to a Superseding Information charging him with a misdemeanor possession of plants containing cathinone, without having obtained a lawful prescription or order for the substance, in violation of 21 USC § 844(a). (**Exhibit 7,** Allocution Tr. at 12; **Exhibit 5** at p. 3).  On November 28, 2007, this Court accepted defendant's guilty plea. (**Exhibit 8,** Docket # 666**).** On February 8, 2008, he was convicted and sentenced to time served to be followed by a term of supervised release of one year, and  a $25 fine. Judgment was entered on February 15, 2008. (**Exhibit 8**, Docket # 741).[1] That is the only legal basis for deportation.

7.      On November 29, 2018, Mr. Mohamed filed a post-conviction petition under 28 USC § 2255 to vacate his 2008 conviction on the ground of ineffective assistance of counsel by incorrectly advising him that there would be no immigration consequences of his plea of guilty to a misdemeanor possession of cathinone without a prescription. (**Exhibit  9**).  By order dated April 9, 2019, this Court denied the petition as untimely (**Exhibit 10** at p. 4**)**. See ¶ 41, *infra.*

---

[1]      In May 2017, Mr. Mohamed was convicted of a misdemeanor in Minnesota state court for directing patients to a physician and given a sentence of supervised probation.

## JURISDICTION, TIMELINESS AND THE STANDARD FOR RELIEF

8.      "A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255." *United States v. Peter,* 310 F.3d 709, 712 (11th Cir. 2002).  "'A *coram nobis* petition is a collateral proceeding through which a court may correct fundamental errors in a prior final judgment." *Moskowitz v. United States*, 64 F.Supp.3d 574, 577 (S.D.N.Y. 2014), citing *United States v. Morgan*, 346 U.S. 502, 507–08 (1954).

9.      The All Writs Act, 28 U.S.C. § 1651(a), confers authority to federal courts to grant the writ. *United States v. Denedo*, 556 U.S. 904, 911 (2009)." *United States v. Hernandez*, 283 F. Supp. 3d 144, 149 (S.D.N.Y. 2018). Jurisdiction is also proper under 28 U.S.C. § 1331.

10.     "It is undisputed that [b]ecause a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations." *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996), quoting *Telink, Inc. v. United States,* 24 F.3d 42, 45 (9th Cir.1994).

11.      "To receive *coram nobis* relief, a petitioner must show 'that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Doe v. United States*, 915 F.3d 905, 910 (2d Cir. 2019).

## INEFFECTIVE ASSISTANCE OF COUNSEL IS ONE GROUND FOR RELIEF.

12.     "[I]neffective assistance of counsel is one ground for granting a writ of *coram nobis*." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014); *Doe v. United States,* 915 F.3d 905, 910 (2d Cir. 2019). To evaluate a claim that a guilty plea was involuntary due to ineffective

assistance of counsel, the Court will use the framework established in *Strickland v. Washington,* 466 U.S. 668 (1984). The defendant must establish that "counsel's representation fell below an objective standard of reasonableness" (*Id.,* at 688), and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Padilla  v. Kentucky*, 559 U.S. 356, 366 (hereinafter, *Padilla*).  Had he been properly advised, Mr. Mohamed would not have pleaded guilty but would have insisted on going to trial if a plea to a non-deportable offense could not be agreed.

13.     In *Padilla,* the Supreme Court noted that where statutory language makes the deportation consequences of a plea "truly clear[2], ... the duty to give correct advice is equally clear" (559 U.S. at 369), and "constitutionally competent counsel would have advised [Padilla] that his conviction for drug distribution made him subject to automatic deportation." (559 U.S. at 360). These words apply equally to Mr. Mohamed at the time he was considering pleading guilty to "an offense that  automatically triggers the removal consequence." (559 U.S. at 373).

14.     In *Padilla,* the Court also found the relevant immigration statute, 8 U.S.C. § 1227(a)(2)(B)(i) — the statute involved here — to be 'succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction.' 559 U.S. at 368.   "[W]here 'the

---

[2]      "Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." (559 U.S. at 368).

8 U.S.C. § 1227(a)(2)(B)(i) provides:

"Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."   .

consequences of [the defendant's] plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect,' the defendant had sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland. Id.* [466 U.S.] at 369, 130 S.Ct. 1473." *United States v. Hernandez*, 283 F. Supp. 3d 144, 150–51 (S.D.N.Y. 2018), quoting *Padilla,* 559 U.S. at 368-369.

15.    Constitutionally competent counsel "must advise a noncitizen/defendant that certain pleas and judgments *will,* not 'may,' subject the defendant to deportation. . . . [A] 'may' warning is deficient (and is actually misadvice) in a case in which the plea 'will' subject the defendant to deportation." *Hernandez v. State*, 61 So. 3d 1144, 1151 (Fla. 3d Dist. App. 2011), *approved,* 124 So. 3d 757 (Fla. 2012)(**Exhibit 21**).[3]

16.    While *Padilla's* (2010) holding that defense counsel has an affirmative duty to advise his client of the deportation consequences of a guilty plea is not retroactive (*Chaidez v. United States*, 568 U.S. 342, 357 [2013]), the Second Circuit "had already held [in 2002] that an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is . . . objectively unreasonable." *Doe v. United States,* 915 F.3d 905, 910 (2d Cir. 2019), citing *United States v. Couto,* 311 F.3d 179, 188 (2d Cir.2002); *Kovacs v. United States*, *supra,* 744 F3d at 50. Coram nobis relief was granted in *Doe* although at the time of Doe's plea "the Supreme Court had not yet held [in *Padilla*] that attorneys must affirmatively warn their clients of the immigration consequences of their potential convictions." *Doe*, *supra,* 915 F.3d at 910.  Relief was also granted

---

[3]    *See also*, *Encarnacion v. State, ,* 295 Ga. 660, 663, 763 S.E.2d 463, 466 (2014)(**Exhibit 22**); *State v. Nkiam*, 243 N.C. App. 777, 789, 778 S.E.2d 863, 871–72 (N.C. App. 2015), *review allowed, writ allowed, appeal dismissed,* 781 S.E.2d 475 (N.C. 2016)(**Exhibit 20**); *Ebrahim v. LeConey,* 2012 WL 6155655 (WDNY.2012)(**Exhibit 23**).

in *Kovacs*, although the plea of guilty was in 1999, more than 10 years before *Padilla*.  *Kovacs, supra,* 744 F.3d at 48.

> **MR. MOHAMED PLED GUILTY TO A MINOR
> MISDEMEANOR AFTER COUNSEL AFFIRMATIVELY
> MISLED HIM AS TO THE SERIOUS LEGAL EFFECT
> OF HIS PLEA. IT WOULD BE A GRAVE INJUSTICE TO
> DEPORT HIM TO SOMALIA WHEN HE HAS BEEN IN
> THE U.S. FOR 23 YEARS AND ALL HIS IMMEDIATE
> FAMILY MEMBERS, U.S. CITIZENS, ARE HERE.**

17.     "[A]s a matter of federal law, deportation is an integral part — indeed, sometimes the most important part — of the penalty that me be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla,* 559 U.S. at 364.

18.     Mr. Mohamed's plea of guilty was based on clearly erroneous advice he was given by his defense counsel as to the immigration consequences of pleading guilty to, and being convicted of, a violation of any law relating to a controlled substance. 8 USC 1227(a)(2)(B)(i).[4]

19.     The Pre-Sentence Report (PSR ¶ 140), quoted in Defendant's Sentencing Memorandum (**Exhibit 11** at p. 5), indicated merely that Mr. Mohamed "*may* be amenable to removal proceedings for violations of the Immigration Act" (emphasis added). Defense counsel stated that he "provided a copy" of that report to Mr. Mohamed, "we have reviewed it" and "discussed it with each other" and defense counsel had "no objections to [its] factual accuracy." (**Exhibit  12** at p. 2).

---

[4]     While, as shown in the attached affidavits of Mr. Mohamed's wife, Khadija Adani Mohamed (**Exhibit 18**), and his present counsel, Thomas R. Newman (**Exhibit 19**), defense counsel has not responded to their requests for information and/or Mr. Mohamed's file. Nevertheless, it is clear from defense counsel's Sentencing Memorandum (**Exhibit 11**) and communications with the Court at the time of sentencing **(Exhibit 12)** just what he did and did not advise Mr. Mohamed, namely, that that Mr. Mohamed "may" not "would" be subject to deportation following his plea of guilty to unlawful possession of a controlled substance.

8

20.     Defendant's Sentencing Memorandum quotes the passage from the PSR that Mr. Mohamed "*may* be amenable to removal proceedings" and notes that "Mr. Mohamed and his family have continually lived with the fear that he *might* eventually be incarcerated and removed from the United States as a consequence of his conviction." (**Exhibit 11** at pp. 5-6; emphasis added). Mr. Mohamed's communication to counsel of his "fear that he *might* be . . . removed from the United States" corroborates his claim that he received incorrect advice.

21.     It was misleading for counsel to affirmatively advise Mr. Mohamed that he "*may*" or "*could*" or "*might*" be deported following his recommended plea of guilty.  As noted above, in *Padilla,* the Supreme Court found the same statute applicable here to be "succinct, clear and explicit in defining the removal consequences" of the plea, that deportation was "*presumptively mandatory.*"  Defense counsel's advice should have been equally "succinct, clear and explicit" — you *will* be deported to Somalia.

22.     Defense counsel's incorrect advice was reinforced by the words used by the Magistrate Judge when posing the crucial and only question on immigration during the allocution.

> "THE COURT:   Do you understand that if you are not a United States citizen you *may be* subject to deportation on the basis of your conviction?
> "THE DEFENDANT:   Yes." (**Exhibit 7**, 7:17-20; emphasis added)

23.     It is clear from the record that while deportation was presented as a possibility — it *may* happen, but then again it may not — Mr. Mohamed should have been told by his counsel that it was much more than that, it was "presumptively mandatory*"* upon "conviction of an offense that automatically triggers the removal consequence." (*Padilla,* 559 U.S. at 369, 373).  He was not told that by his counsel.  (**Exhibit 1** at ¶ 8).

24.     It is clear from comments made at sentencing that the Court did not desire Mr. Mohamed's deportation[5] or think it would be "*presumptively mandatory*" (*Padilla,* 559 U.S. at 369) if the Court denied defendant's motion for relief under 18 USC § 3607 and imposed a judgment of conviction with a sentence of time served, one year probation and a $25 fine. The Court stated that the decision whether it would be appropriate to deport Mr. Mohamed from this country "will be made by a separate agency. It is not a decision for me to make. But to the extent that agency is looking to *my sentence as a signal as to what should happen with respect to any immigration decision, I am not intending the sentence that I impose here today to be construed as a signal in favor of deportation.* That is not my intent."[6] (**Exhibit 12,** Tr. 14:21-15:13, emphasis added).

25.     Defense counsel should have alerted the Court to the undeniable fact that Mr. Mohamed's plea of guilty to the controlled substance violation would "trigger the removal consequence" and be "presumptively mandatory" (*Padilla,* 559 U.S. at 369, 373), upon entry of the judgment of conviction.  The Court would then have realized there was neither need for, nor point in, the agency looking for a signal as to whether or not to deport Mr. Mohamed. That was bound to occur since 8 USC § 1227(a)(2)(B)(i) provides that he "is deportable" and "*shall, upon*

---

[5]     Deportation is a "drastic measure," often amounting to lifelong "banishment or exile" (*Sessions v. Dimaya*, 584 US ___, 138 S. Ct. 1204, 1212 … (2018), quoting *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 … (1948)), that can result in loss "of all that makes life worth living" *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922).

[6]     "I do not find based on all the facts presented to me that it would be appropriate to deport you from this country" and the Court was "not intending the sentence that I impose here today to be construed as a signal in favor of deportation" (**Exhibit 12,**  Tr. 15:3-11).

*order of the Attorney General, be removed*"[7] (emphasis added) as a consequence of the judgment of conviction of a violation of a law relating to a controlled substance.

26.     Moreover, the Court was "impressed that you [Mr. Mohamed] have a job working as a translator.  It seems to be something you have been doing for a significant period of time. That is good. It is because of the employment history that I am not going to send you to prison." (**Exhibit 12**, Tr. 16:12-16). The Court imposed a term of supervised release of one year with conditions that clearly would not be meaningful if Mr. Mohamed was known to be subject to presumptively mandatory deportation to Somalia, *e.g.*, participation in a program approved by the probation office for substance abuse, submitting to reasonable search by the probation officer; supervision by the district of your residence. (**Exhibit 12**,  Tr. 16:24 -17:20).

27.     It is also clear from the following statements by defense counsel, made orally at the time of sentencing, that he did not focus the Court's or his client's attention on the presumptively mandatory deportation that would be a consequence of his plea and conviction:

> Because Mr. Mohamed, a young man, aged 27, will have the opportunity, having been convicted of a relatively minor misdemeanor possession offense, will have the opportunity to prove to this court that his prior encounters with the law, most of which are traffic infractions, will not continue. He will continue to mature. He will continue his gainful employment. He will continue to help his family, who needs him, and prove to this court that he is worthy of the relief that he ca get under 3607.  (**Exhibit 12,** Tr. 8:18 - 9:1)

---

[7]     "In *Padilla,* the majority opinion noted the potential availability to the defendant of an avenue of relief from a deportation order: 8 U.S.C. § 1229b, which grants the Attorney General discretionary authority to cancel an alien's removal. 559 U.S. at 363–64 … The majority explained that a noncitizen's 'removal is practically inevitable but for the possible exercise' of this discretion, but still concluded that the defendant's removal was a 'presumptively mandatory' consequence and that 'the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence [.]' *Id.* at 364, 368, 369, . . . In short, *Padilla* focused on whether the defendant's conviction made him deportable under 8 U.S.C. § 1227 and not on the availability of possible avenues of relief. *State v. Nkiam, supra*, 243 N.C. App. at 789, 778 S.E.2d at 871. (**Exhibit 20**).

. . . [H]e has a [then] two-and-a-half-year-old daughter, that he is devoted to, and that it is this relationship, this child, what they [he and his ex-wife] have in common, which is important. He explains to me that they do, irrespective of their differences, recognize the importance of maintaining a relationship because of the child, for the sake of the child." (**Exhibit 12,** at Tr. 10:16-23).

**MR. MOHAMED WAS CONCERNED ABOUT STAYING IN THIS COUNTRY AND WOULD HAVE (1) PREFERRED TO NEGOTIATE A PLEA TO A NON-DEPORTABLE OFFENSE OR (2) OBTAIN THE GOVERNMENT'S CONSENT TO PROBATION UNDER 18 USC § 3607, OR (3) INSISTED ON LITIGATING HIS AVAILABLE AND VIABLE DEFENSES.**

28.     "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, __ U.S. __, 137 S. Ct. 1958, 1965 (2017), quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) Or, that "but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Kovacs v. United States,* 744 F.3d 44, 52 (2d Cir. 2014).  Or, that there was a reasonable probability that, but for counsel's error, "he would have explored the option of renegotiating his plea agreement." *See United States v. Kwan*, 407 F.3d 1005, 1017-18 (9th Cir. 2005) (reversing the district court's denial of a writ of error coram nobis where "Kwan could have gone to trial or renegotiated his plea agreement to avoid deportation"). In all such cases, the petitioner need only "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla,* 559 U.S. at 371.

29.     If Mr. Mohamed had been advised that he faced presumptively mandatory deportation to Somalia, a  lawless, "terrorist safe haven" with "dire humanitarian conditions, criminal activities and other symptoms of the lack of a functional central government" for many years[8] — from which he and his family fled to the United States in 1995 — there is "a reasonable probability" that he would have taken his chances with a trial at which his conviction was by no means certain; in fact, he was likely to have been acquitted by a jury as he had several viable defenses,[9] as is made clear by the Court's jury instructions in the trial of several co-defendant-co-conspirators. (**Exhibit 13**).  In any case, Mr. Mohamed's decision to reject the plea bargain would surely have been "rational under the circumstances." *Padilla,* 559 U.S. at 371.

30.     Competent counsel would have sought and most likely obtained an agreement for Mr. Mohamed to plead guilty to an offense that would not lead to presumptively mandatory deportation.[10]

---

[8]     Somalia: U.S. Government Policy and Challenges, Hearing Before The U.S. Senate Subcommittee on African Affairs, Committee on Foreign Relations, July 11, 2006, Opening Statement of Sen. Russell Feingold, p. 1. (**Exhibit 14**).

In *Padilla*, the Court noted the Commonwealth's concession at oral argument that "were a defendant's lawyer to know that a particular offense would result in the client's deportation and that, upon deportation, the client and his family might well be killed due to circumstances in the client's home country, any decent attorney would inform the client of the consequences of his plea. . . .. We think the same result should follow when the stakes are not life and death but merely "banishment or exile." 559 U.S. at 371 (citations omitted).

[9]     Mr. Mohamed has a lighter burden on this petition. "[T]he question is not whether the defense would ultimately have been successful. Rather, the inquiry is whether the defense was viable and sufficiently promising that [petitioner] would have litigated the defense to avoid immigration consequences." *Doe v. United States*, 915 F.3d 905, 914–15 (2d Cir. 2019).

[10]    In *Missouri v. Frye*, 566 U.S. 134, 143–44 (2012), the Supreme Court recognized that "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. . . . 'To a large extent ...

31.    In *Padilla,* the Supreme Court recognized that, "[a]s in this case, a criminal episode may provide the basis for multiple charges, of which only a subset mandate deportation following conviction. Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence." (559 U.S. at 373).

**VIABLE DEFENSES THAT WERE AVAILABLE TO MR. MOHAMED.**

32.    First, the Court charged that "[o]f course, mere presence at the scene of a crime or mere association with a conspirator does not make one a member of a conspiracy" (**Exhibit 13**, at p. 20),  and that "[y]ou must find that the defendant was aware that the object of the conspiracy that he was joining was to distribute or to possess with intent to distribute either cathinone or some substance controlled by American drug abuse law." (**Exhibit 13,** at p. 22**)**. The Court also charged that "[i]f you find that the defendant … believed only that that khat would be seized pursuant to agricultural protection regulations then you must acquit the defendant of the crimes in Counts One and Two," the only charges against Mr. Mohamed. (**Exhibit 13**, at pp. 27-28).

33.    Second, khat is and has been used in social and religious settings in Somalia and surrounding countries for centuries and, in 2006, was legal in many countries.[11] Thus, the jury was

horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long [and who gets deported]. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system.' Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992)."

[11]    Many Somali residents in the United States may "view the stimulant as more akin to a strong cup of coffee than a dangerous menace."  Verhovek, DEA's Khat Sting Stirs Up Somali 'Cultural Clash', Los Angeles Times, Aug. 22, 2006. (**Exhibit  15**) *https://www.latimes.com/archives/la-xpm-2006-aug-22-na-khat22-story.html*

instructed,  "To the extent that you have evidence of a defendant's belief as to what the law was in another nation you may consider that evidence only for whatever light, if any, you find that it sheds on the defendant's intent and knowledge with respect to the crimes with which he was charged in the Indictment." (**Exhibit 13**, at p. 69**).** He would have benefited from a similar charge.

34.     Third, the Court's January 30, 2007 Corrected Opinion and Order on Defendants' Motion to Dismiss (**Exhibit 17**, at p. 11), states, "Khat is not a controlled substance….The Government will not be able to secure a conviction on a theory that a defendant knowingly and intentionally distributed khat." Rather, the government must prove the defendant knowingly and intentionally distributed cathinone or some controlled substance. (**Exhibit 17**, at p. 12).

35.     In that same opinion, the Court stated, "Without special precautions, cathinone degrades swiftly after the khat plant is harvested, and there is little likelihood that it is present in the plant in any appreciable quantity after its arrival in this country from Africa [and cross-country journey to St. Croix, Wisconsin], or that it can contribute much if at all to any stimulant effect that the plant may still have after that lengthy journey."  ((**Exhibit 17**, at pp. 10-11).  "Even the DEA agrees that after about 48 hours — and no more than 72 — the cathinone is essentially gone" from khat. (**Exhibit 16,** msnbc.com**).**  This would raise serious doubts among jurors as to Mr. Mohamed's guilt.

---

In 2007, "Khat [was] legally imported in many Western countries, including Britain, Germany, the Netherlands and Italy, and is freely used among African immigrants in those nations. . . .
The United States has taken a hard line on that, but the law that applies to it is ambiguous. Huus, Making A Federal Case Out Of An Obscure Leaf, msnbc.com
*http://www.nbcnews.com/id/18096999/ns/us_news-crime_and_*... (**Exhibit 16**)

36.     At a trial, the government will have to prove that the khat found in Mr. Mohamed's car by state police officers during a traffic stop — not by federal officials specifically investigating khat smuggling and distribution — was *properly* analyzed and contained some detectable quantity of cathinone.[12] The chain of evidence, chemical analysis and related proofs of the cathinone allegedly contained in the plants found in Mr. Mohamed's automobile will be of particular importance to the defense. This will require expert evidence that is likely to be conflicting, undermining the prosecution's burden to prove Mr. Mohamed's guilt beyond a reasonable doubt.

37.     Fourth, under Count One, the government had to prove that the defendant exercised control over the controlled substance with the state of mind or purpose to transfer it to another person, *i.e.*, that he intended to distribute the controlled substance.  There is no showing that Mr. Mohamed exercised control over his passenger's package, or that he intended to transfer it to anyone else, or had the ability to do so. As noted in ¶ 3 above, charges against Mr. Mohamed in St. Croix stemming from the khat found in his car were dismissed "on prosecutor's motion." Given

---

[12]     During his allocution, Mr. Mohamed waived "any right to require DNA testing of physical evidence and that, as a result, the government will not preserve such evidence" (**Exhibit 7**, Tr. 11:21-25), and agreed "that those plants indeed possessed the controlled substance … cathinone." (*Id.*, Tr. 9-18).

This waiver, and all others, "would be unenforceable if the Court finds …[Mr. Mohamed's] claim that the waiver was the result of ineffective assistance of counsel was meritorious." *United States v. Monzon*, 359 F.3d 110, 118–19 (2d Cir. 2004).  "The rationale is that 'the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel." *United States v. Hernandez*, 242 F.3d 110, 113–14 (2d Cir. 2001).

Also unenforceable would be Mr. Mohamed's waiver of the right to "appeal  or otherwise challenge his conviction on the grounds that the government has failed to produce discovery material or information that would tend to prove your innocence." (**Exhibit 7**, Tr. 11:15-20).

Mr. Mohamed's undeniably limited role as a driver of someone he had just met at a wedding, a jury is unlikely to be persuaded by the Government.

38.     Fifth, the government has to prove Mr. Mohamed did not act "because of mistake, accident, mere negligence or other innocent reason" (**Exhibit 13**, at p. 19). "[Y]ou must determine not only whether he participated in it [the conspiracy], but whether he did so with knowledge of its illegal objective. Did the defendant join the conspiracy with an awareness of its aim and purpose and with the specific intent of furthering that purpose?" (**Exhibit 13**, at p. 19). This will be difficult, if not impossible, for it to do.

39.     Sixth, venue was also questionable. (**Exhibit 13**, at p. 49).  Mr. Mohamed's actions appear to have been limited to Illinois and Wisconsin.  There is no nexus whatsoever to New York, other than vague "conspiracy" allegations.  A motion for a change of venue and a separate trial would likely be granted.[13]

### THE PETITION IS TIMELY.

40.     "Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations." *Telink, Inc. v. United States,* 24 F.3d 42, 45 (9th Cir.1994). A petition for a writ of *coram nobis* may be "time barred if the petitioner cannot provide a justified reason for failure to seek appropriate relief at an earlier date." *United States v. Hernandez*, 283 F. Supp. 3d 144, 153 (S.D.N.Y. 2018). The

---

[13]     The waiver of "any venue based defense" would also be unenforceable if the Court finds it was the result of ineffective assistance of counsel. *United States v. Monzon*, 359 F.3d 110, 118–19 (2d Cir. 2004); *United States v. Hernandez*, 242 F.3d 110, 113–14 (2d Cir. 2001).

timeliness inquiry "must be determined on a case-by-case basis, with full regard for the attendant circumstances." *Nicks v. United States*, 835 F.Supp. 151, 153 (S.D.N.Y. 1993).

41.     This Court's order dated April 4, 2019 (**Exhibit 10**, at p. 3), denying as untimely Mr. Mohamed's 28 U.S.C. § 2555 motion to vacate his sentence, notes that '[i]n his motion, he explains that he did not timely file his petition because he was not aware of the immigration consequences of his plea until he was placed in removal proceedings" in June 2017. The Court found this argument "unavailing" because the plea allocution transcript "indicates that the Court specifically advised Mohamed that he *could* be subject to deportation on the basis of his conviction." (*Ibid*., emphasis added). That advice was not sufficient. Since Mr. Lee attempted to address Mr. Mohamed's immigration concern, he had an obligation to do so effectively and correctly. He failed to do so.  It was not enough to stand mutely by while the Magistrate Judge said that removal *may* happen when counsel should have known that result was presumptively mandatory and virtually certain to happen upon conviction of the controlled substance violation.

> **WHEN THE COURT DENIED THE REQUESTED RELIEF,
> UNDER 18 U.S.C. § 3607, DEFENSE COUNSEL FAILED TO
> WITHDRAW THE GUILTY PLEA.**

42.     In his Sentencing Memorandum (**Exhibit 11,** at p. 6), Mr. Mohamed's counsel, Mr. Lee, "respectfully urge[d] the Court to place Mr. Mohamed on probation pursuant to the provisions of 18 U.S.C. § 3607[14], and he repeated his request at the time of sentencing, asking the Court "to

---

[14]     18 U.S.C. § 3607 provides, in relevant part:

**(a) Pre-judgment probation.**--If a person found guilty of an offense described in section 404 of the Controlled Substances Act (21 U.S.C. 844)--

   **(1)**     has not, prior to the commission of such offense, been convicted of violating a Federal or State law relating to controlled substances; and

   **(2)**     has not previously been the subject of a disposition under this subsection;

give him [Mr. Mohamed] the chance that is provided by 3607 to be on probation" (**Exhibit 12**, Tr.

12: 21-22). The government opposed the request (**Exhibit 5,** at pp. 4, 6) and the Court denied it,

stating, "I don't find that as an exercise of my discretion it is appropriate to give the relief under

3607 that your attorney asks for." (**Exhibit 12,** Tr. 12:25-13:2). Rather, the Court believed "it

would be important for you to also have on your record a conviction in this case, hopefully because

it will assist in deterring you in the future from engaging in further illegal activity, ..." (**Exhibit**

**12,** Tr. 15-18).

43.     At that moment, defense counsel should have understood that such a conviction

meant the presumptively mandatory deportation of Mr Mohamed to Somalia and, immediately,

should have moved for permission for Mr. Mohamed to withdraw his plea of guilty. Defense

counsel failed to do so, another instance of the ineffective assistance of counsel provided to Mr.

Mohamed.

44.     Pursuant to Fed.R.Crim.P. 32(e),[15] a district court may permit withdrawal of a

guilty plea prior to sentencing if there are valid grounds for withdrawal and if granting the motion

---

the court may, with the consent of such person, place him on probation for a term
of not more than one year without entering a judgment of conviction. At any time
before the expiration of the term of probation, if the person has not violated a
condition of his probation, the court may, without entering a judgment of
conviction, dismiss the proceedings against the person and discharge him from
probation. At the expiration of the term of probation, if the person has not violated
a condition of his probation, the court shall, without entering a judgment of
conviction, dismiss the proceedings against the person and discharge him from
probation. If the person violates a condition of his probation, the court shall proceed
in accordance with the provisions of section 3565.

[15]     Fed. R. Crim. P. 11(d) provides:

(d)     Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea
of guilty or nolo contendere:
(1)     before the court accepts the plea, for any reason or no reason; or
(2)     after the court accepts the plea, but before it imposes sentence if:
(A)     the court rejects a plea agreement under Rule 11(c)(5); or

would be fair and just, giving due regard to any prejudice the government might suffer as a result." *United States v. Couto,* 311 F.3d 179, 185 (2d Cir. 2002).  The specter of deportation to Somalia stemming from a plea of guilty based on ineffective assistance of counsel is a fair and just reason for seeking to withdraw the plea. The government would not have been prejudiced.

### DEFENSE COUNSEL HAS NOT RESPONDED TO REQUESTS FROM MR. AND MRS. MOHAMED AND THE UNDERSIGNED, PRO BONO COUNSEL, TO DISCUSS THE PLEA AND CONVICTION.

45.      In 2017, Mr. Mohamed called Mr. Lee and said he wanted to talk to him about being detained by ICE.  Mr. Lee said he could not help him and told him not to call again.   Mr. Mohamed then asked his wife to contact Mr. Lee.  She did so and asked if he could help them and requested a copy of Mr. Mohamed's file. Mr. Lee told her the case was closed, that he could not represent her husband and never sent her the file. [**Exhibit 1,** ¶ 13; **Exhibit 18**, ¶ 6].

46.      On each of the mornings of November 6, November 7, and November 8, 2019, Mohamed's attorney, Thomas R. Newman, telephoned the law office of Winston Lee, Esq, 20 Vesey Street, New York, NY 10007. (212 267-1911), Mr. Mohamed's trial counsel at the time of his plea of guilty before Magistrate Judge Francis in November 2007, and his subsequent conviction and sentencing by Hon. Denise L. Cote, USDJ, on February 8, 2008. When no one answered the telephone, he identified himself and left a voice mail message and his telephone number asking Mr. Lee to please call him to discuss one of his clients from 2008, Mr. Mohamed, who Duane Morris had been asked to consider representing on a *pro bono* basis. He received no response to any of his calls.(**Exhibit 19**, Newman Affidavit, ¶ 2).

---

(B)      the defendant can show a fair and just reason for requesting the withdrawal.

47.     On the morning of November 8, 2019, Mr. Newman also spoke to a woman who answered Mr. Lee's office telephone, gave her name as Ariana, and said Mr. Lee was not in but that she would give him the message and he would return Mr. Newman's call. When Mr. Newman did not hear from Mr. Lee by 2:30 pm on November 8, 2019, he sent him a FAX copy of a letter asking Mr. Lee to contact him about Mr. Mohamed. (**Exhibit 19**, Exh. A)  Mr. Newman never heard from or had any other response from Mr. Lee or anyone on his behalf. (**Exhibit 19**, ¶ 2).

## PRAYER FOR RELIEF

48.     In view of the foregoing, it is respectfully requested that this Court issue a writ of error coram nobis vacating Mr. Mohamed's 2008 conviction and sentence, and grant such other and further relief as this Court deems just and proper.

Dated: New York, NY
       December 4, 2019.

Respectfully submitted,

DUANE MORRIS LLP

Thomas R. Newman   (TN8170)
Kimball Ann Lane      (KL8931)

21