# EXHIBIT 2-1

founded fear of persecution must be both subjectively genuine and objectively reasonable. Yu An Li v. Holder, 745 F.3d 336, 340 (8th Cir. 2014). To demonstrate a subjective fear of persecution, an applicant must demonstrate a genuine apprehension or awareness of the risk of persecution. Matter of Acosta, 19 I&N Dec. at 221. To satisfy the objective element, the applicant's subjective fear must be supported by "'credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's country.'" Damkan v. Holder, 592 F.3d 846, 850 (8th Cir. 2010) (quoting Mamana v. Gonzales, 436 F.3d 966, 968 (8th Cir. 2006)). A ten percent chance of future persecution can be sufficient to meet the asylum requirements. Cardoza-Fonseca, 480 U.S. at 431; Bellido v. Ashcroft, 367 F.3d 840, 845 n.7 (8th Cir. 2004).

In evaluating whether the applicant has sustained the burden of proving a well-founded fear of persecution, the applicant is not required to provide evidence that he or she would be singled out individually for persecution if the applicant establishes that there is a pattern or practice of persecution of persons similarly situated to the applicant on account of one of the enumerated grounds and that the applicant is a member of and identified with that group. 8 C.F.R. § 1208.13(b)(2)(iii); see also Matter of S-M-J-, 21 I&N Dec. 722, 731 (BIA 1997). However, to constitute a "pattern or practice," the persecution of the group must be "systemic, pervasive, or organized." Ngure v. Ashcroft, 367 F.3d 975, 991 (8th Cir. 2004).

After careful reconsideration of the record, the Court now concludes Respondent has not met his burden to show he has a well-founded fear of persecution. While Respondent has expressed a subjectively genuine fear of persecution, he has not demonstrated his fear is objectively reasonable.

Respondent claims the terrorist group al-Shabaab will persecute him because of his religion. Specifically, Respondent argues his failure to adhere to the strict interpretation of Islamic law promoted by al-Shabaab will lead al-Shabaab to target him for torture or death. A critical piece of support for Respondent's claim is the collection of alleged threats he received years ago after he posted videos online of himself singing.[6] Respondent testified about the threats he received after he posted a video on the Internet (YouTube.com). See Ex. 28 at 120–27. Respondent testified that he received criticism and threats after he posted one particular music video in 2013, allegedly featuring a woman who was only partially clothed. See id. Respondent testified the family of the woman featured in the 2013 video threatened him, along with their tribe. See id. at 126. He also testified that the video angered all Muslim people. See id. at 120, 122. Respondent's wife testified she had seen "many videos" on YouTube where al-Shabaab members threatened to kill Respondent. See id. at 174–75. Respondent's brother also testified that he had seen "a lot" of videos online threatening to kill Respondent in response to videos Respondent had posted online. See id.

---

[6] IJ Olmanson relied heavily on this fact in making her prior finding that Respondent had a well-founded fear of persecution based on his religion, in the decision dated September 28, 2018. See Ex. 38 at 7–8 (finding the fact that Respondent is a musician and the fact that he received threats related to his videos online would make him stand out as a target to al-Shabaab in Somalia).

at 223–25. Similarly, Respondent's father testified he had seen threatening videos sent by al-Shabaab to Respondent. See id. at 235–36. Respondent's father testified the reason they threatened to kill Respondent was because "[h]e sang a song and they don't understand our language, our Benadiri." Id. at 236.

The Court acknowledges that Respondent and his witnesses credibly testified that they believed the online threats came from members of al-Shabaab in Somalia in response to music videos Respondent had posted. However, the Court finds a lack of objective, corroborating evidence to show the number, length, content or source of those threats. While Respondent's YouTube video may have brought him to the attention of nefarious actors in 2013 when it was published online, six years have intervened. There is no footprint for this video online, as it was removed. Previously, IJ Olmanson gave Respondent's prior counsel a chance to produce any transcription of relevant videos. See Ex. 28 at 194–97. To date, the Court has not received a transcript showing the content of the alleged videos or any threatening comments or video content posted online in response. The only relevant documents in the record are two screenshots: one shows an untitled YouTube video as being "restricted," and another shows a file labeled "Video" in a folder on a hard drive (with a preview photograph). See Ex. 14 at 100–01. The evidence in the record provides scant detail from which to conclude that the persons who responded to the video in a threatening fashion, in fact, are affiliated with al-Shabaab.[7] This cuts against the likelihood that Respondent will face harm from al-Shabaab if returned to Somalia.

The Court finds Respondent's argument that he is a "public figure" unpersuasive. He testified principally about one music video that he posted online in 2013, but that video is no longer available online. The record contains no further evidence that would tend to show Respondent is a public figure in Somalia. Additionally, six years have passed since the video was posted, and Respondent has not presented evidence of recent or immediate threats against him. Even if al-Shabaab was responsible for the threats he received years ago, the record does not show that al-Shabaab still seeks to harm Respondent.

Moreover, the country conditions reports do not show Respondent would face a reasonable possibility of persecution based on his religion. The Court recognizes the evidence in the record shows al-Shabaab continues to commit grave human rights abuses, including unlawful killings of civilians. See id. at 2–4, 12–13. Al-Shabaab also tortures and kills some individuals whom al-Shabaab accuses of spying, whom al-Shabaab sees as supporting the Somali government, and whom al-Shabaab deems "apostates"—those who contravene their strict interpretation of Islamic law. See Ex. 34 at 183, 224–26. However, al-Shabaab mainly attacks government forces and targets, not ordinary civilians. See id. at

---

[7] In its July 2, 2019 remand decision, the Board stated the DHS should have the opportunity on remand to explore the source of the YouTube threats. See Ex. 44 at 3. The DHS chose not to take further testimony from Respondent on the subject and did not submit any new evidence. Respondent, for his part, also did not submit any new evidence to corroborate the source of the threats. He did not offer an explanation for the lack of corroborating evidence, aside from the fact that the videos were taken down.

Decision – A071-710-649                                6

115. For example, in June and July 2017, al-Shabaab dispersed leaflets warning bystanders to avoid government buildings. See id. at 143. Al-Shabaab carries out complex attacks on "soft" civilian targets, such as hotels and restaurants, resulting in collateral civilian casualties. See id. at 115. These type of terrorist attacks, however, are indiscriminate.

The Court acknowledges that al-Shabaab inflicts harsh physical punishments for relatively minor perceived violations of Islamic law (e.g., listening to music), but this occurs predominantly in areas al-Shabaab controls. See Ex. 14 at 5, 7. Al-Shabaab controls a significant portion of territory in Somalia, including most rural areas. See Ex. 13 at 91; Ex. 14 at 8, 31. However, government forces control the remaining areas, including urban areas. See Ex. 34 at 91.

The aforementioned evidence does not show Respondent faces a reasonable possibility of persecution in areas that are controlled by government forces. Likewise, the evidence presented is insufficient to show there is a country-wide pattern or practice of persecution by al-Shabaab of persons similarly situated to Respondent on account of their failure to adhere to al-Shabaab's religious edicts. Respondent has not provided information on how his religious practices would be visibly different from the majority of Muslims in Somalia.

The Court also finds Respondent could internally relocate to the capital city of Mogadishu. Government forces control Mogadishu, and the majority Hawiye clan dominates. See Ex. 34 at 144. Al-Shabaab does not control the city, but it still has a presence and carries out attacks in the city. See id. at 83, 98, 109, 142, 145–48, 155–56. Nevertheless, in Mogadishu, the highest risk of violence from al-Shabaab for civilians is being in the wrong place at the wrong time. See id. at 143. The record in this case does not show Respondent would be targeted by al-Shabaab in Mogadishu. Rather, the record indicates Respondent is an average citizen, who would not be targeted in a government-controlled area. Thus, the Court now finds relocation to an urban area, such as Mogadishu would be possible and reasonable.[8]

The Court acknowledges Respondent's argument that relocation to Mogadishu would not be reasonable due to the humanitarian situation and the generally high levels of violence. Some evidence in the record shows the country is plagued by major humanitarian problems, such as natural disasters and displacement, and is afflicted with serious security issues, such as high levels of societal violence. See Ex. 14 at 1–2; Ex. 34 at 30–33, 83, 87–88. However, these general country conditions do not persuade the Court that internal relocation to a city like Mogadishu would be unreasonable.

Finally, the Court also recognizes the tragic death of Respondent's cousin. See Ex. 35 at 1-6. Yet the Court finds Respondent's cousin was not targeted for any of the same reasons

---

[8] On remand, the Board instructed the Court to clarify its prior findings that Respondent could reasonably and safely avoid future harm based on clan but not based on religion. See Ex. 44 at 3. The Court now finds internal relocation is not possible or reasonable based on clan or religion. Thus, further clarification regarding the previous findings is unnecessary.

Decision – A071-710-649                    7

Respondent asserts as a basis for relief. Rather, Respondent testified his cousin was killed by al-Shabaab because he refused to close his shop. This does not support Respondent's claims.

In sum, the Court finds Respondent will not face a reasonable possibility of persecution by al-Shabaab in Somalia on account of his religion. The Court concludes he has failed to meet his burden to show a well-founded fear of persecution. Thus, the Court will deny Respondent's asylum claim as it relates to persecution on the basis of religion.

### B. Clan Membership

The Board affirmed IJ Olmanson's conclusion that Respondent did not carry his burden of proof for withholding of removal regarding his claim that he would face a threat to his life or freedom on account of his clan membership. (Ex. 44 at 2). Although the Board expressly remanded this case to address Respondent's religion-based claims, the Court now briefly addresses Respondent's claims based on clan membership because the Court did not previously rule on the merits of *asylum* as to those clan-based claims. IJ Olmanson only ruled on withholding of removal under INA § 241(b)(3), which has a more stringent standard of proof (a "clear probability") as compared to the burden for asylum (a "reasonable possibility"). See Matter of H-L-H- & Z-Y-Z-, 25 I&N Dec. 209, 218 (BIA 2010) ("Because the respondent has not satisfied the lower burden of proof for asylum, it follows that she has not met the higher burden for withholding of removal.").

Respondent claims he would face persecution because of his membership in the Benadiri clan. The Court finds Respondent has not shown a reasonable possibility that he would face persecution on account of his clan membership. The Court incorporates the analysis from the September 28, 2018 decision regarding Respondent's clan-based claims of persecution. See Ex. 38 at 10–12. The Court again finds Respondent is a member of the Benadiri clan[9] and concludes that he is a member of a valid particular social group. The Benadiri and the Reer Hamar are minority groups in Somalia. See Ex. 13 at 17-18, 72; Ex. 14 at 38, 82, 100; Ex. 34 at 335-336, 341. The Benadiri and Reer Hamar clans have been able to negotiate protection agreements with stronger majority clans and access governmental positions, thus affording these groups some protection. See Ex. 13 at 31–32, 54; Ex. 34 at 341, 344. To the extent the Benadiri and Reer Hamar are vulnerable, they are "exploited but not marginalized." (Ex. 13 at 30). In addition, the record shows the risk of persecution of the Benadiri by majority clans has "decreased significantly since the early years of the civil war." See id. at 100. The Reer Hamar face discrimination, but they are "not without power" and are "rarely targeted by other clans." See id. at 53. Although clan violence is widespread, most violent clan conflicts are localized and are based on private disputes. See Ex. 34 at 84, 102. Based on the above, the Court finds Respondent has not met his burden of proof—for purposes of asylum—to show he faces a well-founded fear

---

[9] Respondent is also a member of the Reer Hamar clan and the Shinshiye. He testified the Shinshiye are part of the Benadiri clan.

of persecution on account of his membership in the Benadiri (or Reer Hamar or Shanshiye) clan. Respondent has not shown by a sufficient probability that he would be persecuted.

In addition, the Court finds Respondent has not met his burden on internal relocation, for purposes of asylum. In 2012, many Benadiri were "living in relative safety in Mogadishu" and the Reer Hamar were living in all districts of Mogadishu. See Ex. 13 at 31, 99. Further, minority group members in Mogadishu "are unlikely to face persecution on the basis of their ethnicity alone." See id. at 5-6, 10. Generally, relocation to Mogadishu and areas of south and central Somalia not controlled by al-Shabaab is viable for minority group members. See id. at 8. The role of clan protection in Mogadishu has also diminished, although it can sometimes be a significant source of protection and varies by clan and by area. See id. at 5, 8; Ex. 34 at 103. The record also notes the "improving security situation" in Mogadishu as of September 2017. See Ex. 34 at 41. Based on the above, the Court finds Respondent has not met his burden to show he could not possibly or reasonably relocate in Somalia.

In short, the Court finds Respondent will not face a reasonable possibility of persecution by al-Shabaab in Somalia on account of his clan membership. The Court concludes he has failed to meet his burden to show a well-founded fear of persecution. Thus, the Court will deny Respondent's asylum claim as it relates to persecution on the basis of clan membership.

### C. Discretion

Respondent has failed to meet his burden of proof for asylum. Because the Court concludes Respondent is not statutorily eligible for asylum, the Court need not clarify the discretionary determination because it is moot. See Ex. 44 at 3 n.4; see also INS v. Bagamasbad, 429 U.S. 24, 25–26 (1976) (stating that as a general rule, courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach).

### b. Withholding of Removal

As Respondent has failed to establish a well-founded fear of persecution on account of a protected ground for asylum, he also fails under the more stringent standard of proof required for withholding of removal. See Prokopenko v. Ashcroft, 372 F.3d 941, 944 (8th Cir. 2004). Therefore, Respondent's application for withholding of removal under INA § 241(b)(3) is denied.

### c. Convention Against Torture

In a prior decision dated September 28, 2018, IJ Olmanson concluded Respondent had failed to meet his burden of proof for relief under Article 3 of the Convention Against

Torture (CAT). See Ex. 38 at 13–14 (finding Respondent did not show the Somali government would acquiesce to the harm he feared at the hands of al-Shabaab, a non-state actor). Neither party challenged that ruling on appeal. See Ex. 44 at 1 n.2. Thus, relief under the CAT is not at issue on remand at this time. In addition, the Court reaffirms the prior rulings by IJ Olmanson dated September 28, 2018, and incorporates that analysis here. See Ex. 38 at 13–14.

Accordingly, the Court enters the following orders:

## ORDERS

**IT IS HEREBY ORDERED** that Respondent's application for asylum under INA § 208 be **DENIED.**

**IT IS FURTHER ORDERED** that Respondent's application for withholding of removal under INA § 241(b)(3) of the Act be **DENIED.**

**IT IS FUTHER ORDERED** that Respondent's application for relief under the Convention Against Torture be **DENIED.**

**IT IS FURTHER ORDERED** that Respondent be **REMOVED** from the United States to **SOMALIA.**

Sarah B. Mazzie
**Immigration Judge**

Decision – A071-710-649                    10